**In re TR–3 INDUSTRIES, a Nevada Corporation and its wholly owned subsidiary, TR–3 Chemical Corporation, a California corporation, Fed I.D. # 95–3503205, Debtor.**

**The CREDITORS' COMMITTEE OF TR–3 INDUSTRIES, INC., a Nevada corporation, and its wholly-owned subsidiary, TR–3 Chemical Corporation, a California corporation, Plaintiff,**

v.

**CAPITAL BANK, a California corporation, Defendant.**

**Bankruptcy No. SA 82–03767–AP. Adv. No. SA 84–0003–AP.**

United States Bankruptcy Court, C.D. California.

June 4, 1984.

Katz, Hoyt, Bell & Seigel, Los Angeles, Cal., Arthur Jarvis Cohen, Downey, Cal., for defendant.

Gary A. Plotkin, Plotkin & Rapoport, Encino, Cal., for plaintiff.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

RALPH G. PAGTER, Bankruptcy Judge.

Defendant, Capital Bank, submits the following statement of the material uncontroverted facts which are undisputed herein by either party, and defendant's proposed Conclusions of Law.

## STATEMENT OF UNCONTROVERTED FACTS

1. TR–3 Industries, Inc. and TR–3 Chemical Corporation (jointly and severally the "Debtor") on August 27, 1972 filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Law, and an order granting relief was duly entered herein, authorizing the Debtor to remain in possession. The Debtor has been engaged in business in and had its principal place of business in Orange County, California.

2. Capital Bank (the "Bank") is a California corporation, duly authorized under the laws of California, to engage in the banking, finance and lending business.

3. As of August 27, 1972, the Debtor was indebted to the Bank, exclusive of interest thereon, in the principal sum of $2,502,711.20 by reason of loans made and monies advanced by the Bank to the Debtor.

4. The said loans and advances were made by the Bank to the Debtor pursuant to security agreements duly executed by the Debtor to secure repayment of the Debtor's obligations to the Bank.

5. The security agreements provided, respectively, that the Debtor thereof granted to the Bank a security interest, pursuant to the California Uniform Commercial Code, in (a) All that certain personal property described in the following schedule(s), to wit:

> "All present and future Accounts Receivable, inventory, Equipment Chattel paper, returned goods and general intangibles, now owned or hereafter acquired and wherever stored, maintained and/or processed along with all proceeds of the foregoing including but not limited to, all money, deposit accounts, insurance proceeds and other tangible and intangible property of debtor resulting from the sale, lease or disposition of the foregoing."

and (b) in

> "All present and future accounts receivables, inventory, equipment, chattel paper, returned goods and general intangibles, now owned or hereafter acquired and wherever stored, maintained and/or processed along with all proceeds of the foregoing, including but not limited to, all money, deposit accounts, insurance proceeds and other tangible and intangible property of debtor resulting from the

sale, lease or disposition of the foregoing."

6. The Bank duly timely filed California UCC–1 Financing Statements, in the form prescribed by the said Commercial Code, with the California Secretary of State, on August 24, 1979 and on January 9, 1981 which, respectively accurately quoted the extent of the Bank's security interest as set forth respectively, in subdivisions (a) and (b) in Finding of Fact (5) above.

7. The Bank did not record any security agreement or financing statement in the U.S. Patent and Trademark Office.

8. The Bank duly filed its claim in this Court asserting it was a secured creditor having a valid, perfected security interest in the assets of the Debtor.

9. The Debtor petitioned this Court for authority to sell all its assets, excluding only cash on hand and accounts receivable.

After hearing, and on December 22, 1982, this Court made its order authorizing the Debtor to sell all its assets (except only accounts receivable and cash) to McKay Chemical Corporation free and clear of any liens and interest therein, if any, with said liens and interests, if any, to attach to the proceeds of such sale.

10. Among the assets then owned by the Debtor were the trademark and tradename "TR–3" and several applications then pending in the U.S. Patent and Trademark Office for registration of other names.

11. Pursuant to said Order dated December 22, 1982, and on December 30, 1982, the Debtors and Blue Coral Marketing Co. (the "buyer"), a wholly owned subsidiary of McKay Chemical Corporation, entered into an "Agreement for Sale of Assets" (the "Agreement"). Paragraph 1(a)(iii) of the Agreement required the Debtor to assign and transfer to the buyer all its patents, trademarks, copyrights and applications therefor, including "rights to the name 'TR–3'". Only "TR–3" was a registered trademark, U.S. Registration No. 801072. However, the Debtor was not and at no time had been the registered owner or assignee thereof of record in the United States Patent Office. (A copy of Exhibit "C" is attached hereto.) One Edwin A. Zenthoefer was the most recent assignee of record by virtue of a recorded assignment dated August 22, 1979. The Agreement provided that a portion of the consideration payable by the buyer was conditioned upon the Debtor being able to transfer to the Buyer clear and recordable title to said U.S. Patent Registration No. 801072.

12. The Debtor thereafter, on April 26, 1983, filed an adversary proceeding complaint in this Court against the assignee of record of the trademark, Edwin A. Zenthoefer, and against Nebco International, Inc., his assignor, alleging therein that the latter had, on November 19, 1973, prior to the date of Nebco's assignment to Zenthoefer, executed an Assignment of the trademark "TR–3" and of the U.S. Registration No. 801072 therefor, to TR–3 International, Inc., which, in 1975 changed its name to TR–3 Chemical Corporation, but that this Assignment had never been recorded. The complaint further alleged that in 1973 Zenthoefer was an officer of both Nebco and of TR–3 International when the Assignment by Nebco to TR–3 International was executed and that he negligently or deliberately failed to record that Assignment. Paragraph 11 of the complaint also alleged that in 1979 all of the assets of TR–3 Chemical Corporation, including the trademark "TR–3", its registration and the goodwill of the business in connection therewith were transferred to plaintiff TR–3 Industries, Inc. and TR–3 Chemical Corporation was dissolved. The defendants defaulted in answering the complaint, and on July 2, 1983 this Court entered judgment declaring Nebco's assignment to Zenthoefer void, that neither of the defendants has any right, title or interest in the registration and trademark, that TR–3 Industries, Inc. had the entire right thereto since 1973, and that it had the right to transfer the same to McKay or its subsidiary Blue Coral Marketing Co.

13. Following appointment of a Creditors' Committee in Chapter 11 proceeding,

it filed, as plaintiff, on January 31, 1984, an adversary complaint against the Bank, as defendant, seeking a declaration that the Bank did not have a valid, perfected security interest in the Debtor's trademarks and tradenames, alleging in paragraph 6 of the complaint: "Plaintiff alleges that Defendant Capital Bank does not have a valid, perfected security interest in the trademarks and tradenames of the Debtor because of Capital Bank's failure to properly perfect its security interest in said items under federal law as required under the Lanham Act, specifically, 165 [sic] U.S.C. Section 1060, in that the Patent and Trademark Office system of recording is the exclusive method of perfecting a security interest in a trademark or tradename." (The reference to "165 U.S.C. Section 1060" is a typographical error, "15 U.S.C. Section 1060" being intended.)

14. Following joinder of issue in this adversary proceeding, the parties, by their respective counsel, each advised this Court that the material facts were not in controversy, that the sole issue involved presented only a question of law, whether 15 U.S.C. § 1060 (Section 10 of the Lanham Act) mandated that in order for the Bank to perfect its security interest in the Debtor's trademarks and tradenames, the Bank should have recorded the security agreements or financing statements in the office of the U.S. Patent and Trademark Office. Each agreed to present the question of law for determination by this Court by respective Motions for Summary Judgment.

15. If any of the foregoing facts be a Conclusion of Law, it shall be deemed included under the following Conclusions of Law.

## CONCLUSIONS OF LAW

1. Neither Section 10 of the Lanham Act (15 U.S.C. § 1060) nor the Lanham Act as a whole (15 U.S.C. §§ 1051 through 1127) contains any statutory provision for the registration recording or filing of any instrument or document asserting a security interest in any trademark, tradename or application for the registration of a trademark. The omission of such provision was intentional when the Lanham Act was enacted.

2. It was not the purpose or intent of Congress in enacting the Lanham Act to provide a method for the perfection of security interests in trademarks, tradenames or applications for the registration of the same, or as a method for giving notice of the existence of a claim of a security interest therein.

3. Neither Section 10 of the Lanham Act (15 U.S.C. § 1060) nor any other section of the Lanham Act (15 U.S.C. §§ 1051 through 1127) specifies a place of filing a claim of security interest in a trademark or application for registration of a trademark, or any place for the filing of the same different than that specified in Division 9 of the California Uniform Commercial Code.

4. The defendant Capital Bank duly and timely complied with the provisions of Division 9 of the California Uniform Commercial Code required under the laws of the State of California, to perfect a valid security interest in those assets of the Debtor set forth in Findings of Fact Nos. 5 and 6 above.

5. The Debtor's trademark "TR–3 and Design", United States Registration No. 801072 and certain pending applications for registration of other trademarks, were owned by it on August 27, 1982, the date of the filing of the petition for relief herein under Chapter 11 of the Bankruptcy Code.

6. There is no genuine issue as to any material fact to be presented to the trial court under the pleadings in this adversary proceeding.

7. The exception contained in subdivision 3(a) of Section 9302 of the Uniform Commercial Code of the State of California is here inapplicable.

8. At all times here pertinent, the defendant, Capital Bank, had a valid, duly perfected and effective security interest in the tangible and general intangible assets of the Debtor set forth in Findings of Fact 5 and 6 above, trademarks, registered

trademarks, tradenames, and application for registration of trademarks are all intangible assets of the owners thereof.

9. Upon the sale by the Debtor of its assets, other than then cash on hand and accounts receivable pursuant to the Order of this Court dated December 22, 1982, the said security interest of the defendant Capital Bank attached to the proceeds of such sale.

10. The defendant Capital Bank's Motion for Summary Judgment should be and hereby is granted.

11. Defendant Capital Bank is entitled to a judgment in its favor dismissing the complaint in this adversary proceeding on the merits.

12. If any Finding of Fact be a Conclusion of Law, the same shall be deemed here included as such.

Defendant's motion for judgment granted.