779 F.2d 901
 Bankr. L. Rep. P 70,913
In re STN ENTERPRISES, d/b/a Atwater Arms, Debtor.
UNSECURED CREDITORS COMMITTEE OF DEBTOR STN ENTERPRISES,
INC., Appellant,
v.
Janice NOYES, individually and as Administratrix of the
Estate of Stephen T. Noyes, Appellee.
 No. 303, Docket No. 85-5059.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 24, 1985.
Decided Dec. 26, 1985.
 
 Jerome I. Meyers, White River Junction, Vt., for appellant Creditors Committee.
 John R. Canney, III (Brian P. Dempsey, Carroll, George & Pratt, Rutland, Vt.), for STN Enterprises, Inc.
 John D. Lanoue, Donovan & O'Connor, Adams, Mass., for appellee Noyes individually.
 James J. Cormier, Bennington, Vt., for appellee Noyes as Adm'x.
 Before OAKES, NEWMAN, and MINER, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 An unsecured creditors' committee of a debtor in possession under chapter 11 of the Bankruptcy Code appeals from a judgment of the district court denying the committee's motion for leave to commence an action. The committee sought leave from the United States District Court for the District of Vermont, Franklin S. Billings, Jr., Judge, to commence an action against Janice Noyes individually and as administratrix of the estate of her husband, Stephen T. Noyes. The husband was the sole stockholder, president, and one of the two directors of STN Enterprises, Inc. (STN), the corporate debtor in possession, from the date of its incorporation until his death. Mrs. Noyes was the other director (a substitute for her late husband was duly elected) and is the corporate secretary. We reverse and remand insofar as the denial of leave to commence an action against Mrs. Noyes individually is concerned, but affirm as to the denial of leave to sue the husband's estate.
 
 
 2
 STN, a dealer in antique arms, was incorporated under Vermont law on August 6, 1982, and the articles named Mr. and Mrs. Noyes the initial directors. STN held its organizational meeting on September 1, 1982, at which time Mr. and Mrs. Noyes constituted themselves as president and secretary, respectively. Mr. Noyes died on May 5, 1984, and on May 29, 1984, the corporation filed a petition for reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. Secs. 1101-1174 (1982 & Supp. II 1984). The assets of the corporation were estimated to be about $4 million and liabilities $14 million. No plan of reorganization has been filed, nor has any trustee been appointed. Sales of most of the assets have been made with bankruptcy court approval under 11 U.S.C. Sec. 363(b) (1982 & Supp. II 1984). Mr. Noyes's estate now is the sole STN stockholder and Mrs. Noyes is administratrix of the probate estate.
 
 
 3
 While we may not be required as a matter of law to view the creditors' committee motion and supporting papers in the most favorable light, it is appropriate to do so because of the sketchy record in this case. Viewing the allegations of the motion and papers in this fashion, we find the creditors' committee claims are based on the following facts:
 
 
 4
 1. From October 8, 1982, to May 2, 1984, Stephen T. Noyes negotiated between $1.6 million and $2.1 million in checks on the STN account made out to "Cash," the use of which funds remains unaccounted for;
 
 
 5
 2. During the year prior to Stephen T. Noyes's death he took $250,000 in salary from the corporation and his wife, at least for tax purposes, was credited with $30,000 in salary;3. For all or a greater portion of this time, the precise time being unknown, the corporation was insolvent;
 
 
 6
 4. During the same period of time the Noyes' home property, owned by them as a tenancy by the entirety, was increased in value, presumably from the funds mentioned in Paragraphs 1 or 2 above, by way of installation of an electrical burglar alarm system and a swimming pool, and construction of a "plush" showroom and an office;
 
 
 7
 5. Presumably also from the funds mentioned in Paragraphs 1 and 2 above, Stephen Noyes bought life insurance in the amount of several hundred thousand dollars on his life, the beneficiary of which was his wife or a trust or trusts for her benefit; and
 
 
 8
 6. Again presumably from the aforementioned funds, a $70,000 debt to Mrs. Noyes's father was repaid in the year preceding the bankruptcy filing.
 
 
 9
 On the basis of these allegations the committee makes the following three legal claims:
 
 
 10
 1. Against Stephen Noyes and hence his estate for wasting corporate assets or making or causing to be made fraudulent or preferential conveyances by the corporation;
 
 
 11
 2. Against Janice Noyes as a director of the corporation for misfeasance or nonfeasance in respect to the alleged waste of corporate assets or self-dealings in connection therewith by her husband and excessive salaries paid both to her husband and herself; and
 
 
 12
 3. Against Janice Noyes personally as either the recipient of a fraudulent conveyance or conveyances (to the tenancy by the entirety or otherwise) or as a person unjustly enriched by the transfers/conveyances made or the insurance paid for out of corporate funds.
 
 
 13
 Leave to sue on the first claim--against Stephen Noyes' estate--was denied by the district court for the good reason that the probate estate of Stephen Noyes for all practical purposes is insolvent;[1] leave is sought, if at all, only with minimal enthusiasm on appeal. More important, leave was properly denied because the statute of limitations has run.[2] For these two reasons the district court could hardly be said unsoundly to have denied a motion addressed, as we discuss infra, to its judicial discretion.
 
 
 14
 As to the two legal claims against Janice Noyes personally, arising out of her alleged misfeasance or nonfeasance as a director and as a recipient of the allegedly misappropriated or wasted corporate funds, directly or indirectly, the district court treated only the former, referring to it as an application to bring a suit "against Janice Noyes, individually, for negligently performing her duties as director and corporate officer of STN." Finding that the trustee or, where one has not been appointed, the debtor in possession has the primary responsibility for initiating suit to conserve assets of a chapter 11 debtor, see 11 U.S.C. Secs. 1106, 1107 (1982 & Supp. II 1984), and that a creditors' committee can bring suit only in the case of a breach of statutory duty by the trustee or debtor in possession, In re Monsour Medical Center, 5 Bankr. 715 (Bankr.W.D.Pa.1980); In re Joyanna Holitogs, Inc., 21 Bankr. 323 (Bankr.S.D.N.Y.1982), the district court denied leave. It did so on the grounds (A) that there was no fiduciary duty of Janice Noyes, director, running to herself as stockholder,[3] and (B) that corporate directors owe a fiduciary duty to creditors of the corporation only " 'under certain circumstances' " (quoting Association of Haystack Property Owners, Inc. v. Sprague, 145 Vt. 443, 494 A.2d 122, 126 (1985)). The court refused to grant permission to file a suit under what it considered a " 'novel or extreme' " theory of liability (quoting id. at 125) because it felt such permission would dramatically expand the creditors' committee implied right to sue.
 
 
 15
 Usually a trustee or, if none has been appointed, the debtor in possession initiates proceedings to recover preferentially or fraudulently transferred assets. See 11 U.S.C. Secs. 704, 1106, 1107 (1982 & Supp. II 1984). Under 11 U.S.C. Sec. 323(b) (1982), the trustee has the explicit power to sue and be sued. Under 11 U.S.C. Sec. 547 (1982 & Supp. II 1984), it is clear that a trustee can initiate suit without court approval to avoid a preferential transfer of assets, see also Bankruptcy Rule 6009, although it is considered the better practice to secure an order of the court for leave to sue. See 4 Collier on Bankruptcy p 547.52, at 547-180 (L. King 15th ed. 1979).
 
 
 16
 The Bankruptcy Code, however, contains no explicit authority for creditors' committees to initiate adversary proceedings. Most bankruptcy courts that have considered the question have found an implied, but qualified, right for creditors' committees to initiate adversary proceedings in the name of the debtor in possession under 11 U.S.C. Secs. 1103(c)(5) and 1109(b), see, e.g., Joyanna Holitogs, 21 Bankr. at 326; In re Toledo Equipment Co., 35 Bankr. 315, 317-20 (Bankr.N.D.Ohio 1983), or in reliance on an implied continuation of creditors' committee powers under the pre-1978 Code. See Monsour Medical Center, 5 Bankr. at 718 (citing Casey v. Baker, 212 F. 247 (N.D.N.Y.1914); 3 Collier on Bankruptcy Part 2, p 60.57, at 1095-96 (L. King 14th ed. 1977); 4B id. p 70.92, at 1055-56 (1978). These courts have allowed creditors' committees to initiate proceedings only when the trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential transfer. We agree with these bankruptcy courts that 11 U.S.C. Secs. 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court.
 
 
 17
 We find that the district court did not properly consider whether appellant's allegations demonstrated that the debtor in possession had unjustifiably failed to initiate a suit against Mrs. Noyes. The district court's ruling failed to take into account that, although in most states directors of a solvent corporation do not owe a fiduciary duty to creditors, quite the reverse is true when the corporation becomes insolvent. See, e.g., Francis v. United Jersey Bank, 87 N.J. 15, 36, 432 A.2d 814, 824 (1981); 3 Fletcher Cyclopedia Corporations Sec. 849 (M. Wolf perm. ed 1975); 3A id. Secs. 1180-84. Thus, the "majority rule" permits recovery by creditors of an insolvent corporation for mismanagement as if the corporation itself were plaintiff, id. Secs. 1180, 1182,[4] while the "minority rule" precludes suit by injured creditors of an insolvent corporation, id. Sec. 1181, although a suit for misappropriation or diversion of corporate property may stand on different and more solid footing, id. Secs. 1185-86. While it would not be appropriate for us to determine in the first instance what the corporate law of Vermont would be under the circumstances present in this case--circumstances which, such as the date of the corporate insolvency, are for the most part unknown--we can say that the district court's reading of the allegations of the committee was too narrow since these allegations relate to an insolvent corporation, albeit leaving the date of insolvency for future resolution.
 
 
 18
 The district court also did not consider--and we decline to resolve in the first instance--Vermont law pertaining to the claim against Janice Noyes as recipient of property fraudulently conveyed, compare Becker v. Becker, 138 Vt. 372, 376-77, 416 A.2d 156, 160 (1980) (where transfer without adequate consideration, proof of grantor-debtor's fraud alone sufficient); Wilson v. Spear, 68 Vt. 145, 149-50, 34 A. 429, 431 (1895) (voluntary conveyance to wife with intent to defraud may be voided by subsequent or antecedent creditor), with Rose v. Morrell, 128 Vt. 110, 114, 259 A.2d 8, 11 (1969) (constructive fraud insufficient as to wife holding property as tenant by entirety), and Stevens v. Hart, 134 Vt. 217, 218, 356 A.2d 499, 501 (1976) (standard of proof of fraud in fraudulent conveyance case is beyond reasonable doubt), or as a person unjustly enriched by her husband's conduct vis-a-vis the corporation, see, e.g., Restatement of Restitution Secs. 123, 150, 168, 178, 204 (1936). Absent such consideration by the district court we cannot evaluate that court's implicit ruling that the creditors' committee could not bring suit on the legal claim we have referred to as the third one made.
 
 
 19
 If the committee presents a colorable claim or claims for relief that on appropriate proof would support a recovery, the district (or bankruptcy)[5] court's threshold inquiry will still not be at an end. In order to decide whether the debtor unjustifiably failed to bring suit so as to give the creditors' committee standing to bring an action, the court must also examine, on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such claim(s) is likely to benefit the reorganization estate. See Toledo Equipment Co., 35 Bankr. at 320.
 
 
 20
 The court's inquiries will involve in the first instance not only a determination of probabilities of legal success and financial recovery in event of success, but also a determination as to whether it would be preferable to appoint a trustee in lieu of the creditors' committee to bring suit (bearing in mind any fees imposed on the estate by such an appointment, the wishes of the parties, and other relevant factors) and the terms relative to attorneys' fees on which suit might be brought. The creditors who compose the committee may agree themselves to be responsible for all attorneys' fees, but if they would seek to impose such fees on other creditors or the chapter 11 estate, whether by contingent fee arrangement or otherwise, that would obviously affect the cost-benefit analysis the court must make in determining whether to grant leave to sue. Hence fee arrangements should not only be made a matter of record but should be carefully examined by the court as it makes that determination.
 
 
 21
 We do not mean to suggest that the court need undertake a mini-trial, cf. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) (no mini-trial in class actions), to determine likelihood of success in such a suit or the attendant fees and expenses involved. But it should assure itself that there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce. Of course, if the creditors' committee represents that its fee arrangement with its attorney will in no event impose a net burden on the bankruptcy estate (because the committee will pay the fee and seek reimbursement only out of any recovery), then the preliminary inquiry can be limited to ascertaining whether the proposed lawsuit has a colorable basis on which to proceed.
 
 
 22
 We reverse the denial as to the claims against Janice Noyes individually and remand accordingly for an appropriate evaluation in light of all the circumstances above outlined and the applicable law.
 
 
 23
 Judgment affirmed in part and reversed in part and case remanded to the district court for proceedings in accordance with this opinion.
 
 
 
 [1]
 The probate estate's assets amounted to $26,460 in addition to contingent and unliquidated claim(s) for personal injuries arising out of Mr. Noyes's airplane crash. The liabilities included, by estimate of counsel dated December 26, 1984, in excess of $150,000 state and federal tax liabilities, plus over $700,000 in general claims filed (some by members of the STN creditors' committee)
 
 
 [2]
 Claims against a probate estate are barred unless presented within four months after the date of first publication of notice to creditors, here July 27, 1984. 14 Vt.Stat.Ann. Sec. 1203 (Supp.1985). On November 19, 1984, counsel filed, on behalf of the creditors' committee, a claim in general terms but unspecified amount based on Mr. Noyes's alleged commingling of funds of the corporate debtor with his own and on his alleged personal tortious and other improper conduct as an officer and director. The claim was disallowed by the administratrix on December 3, 1984. The disallowance letter pointed out that a disallowed claimant is required to petition to the probate court or commence a proceeding against the administratrix within 60 days of the mailing of the notice of disallowance under 14 Vt.Stat.Ann. Secs. 1204(3), 1206(a) (Supp.1985). No such petition was filed or proceeding commenced within the 60-day limit
 
 
 [3]
 It appears from the record before us that Mrs. Noyes individually was not the sole stockholder of the debtor in possession. As the district court itself said, the estate of Stephen Noyes is the sole stockholder. Since that estate is insolvent, the creditors of the estate with duly allowed claims have an interest, for whatever it may be worth, in the stock held by the estate. This point is doubtless moot, however, in light of the financial state of the debtor in possession and its creditors' claims, supra note 1
 
 
 [4]
 Even the "majority rule" courts sometimes draw a line--somewhat akin to the will-o-the-wisp distinction between negligence and gross negligence, see Moisan v. Loftus, 178 F.2d 148 (2d Cir.1949) (L. Hand, J.)--between "nonfeasance" and "misfeasance," 3A Fletcher Cyclopedia Corporations Sec. 1180, at 308 (M. Wolf perm. ed. 1975), but the distinction lacks acceptance in modern governance theory. See Principles of Corporate Governance: Analysis and Recommendations Sec. 4.01(b) & comment, Sec. 4.01(d) & comment at 57 (Tent. Draft No. 3, 1984)
 
 
 [5]
 This action was before the district court in the first instance because the then bankruptcy judge, Charles J. Marro, disqualified himself. There is now a newly appointed bankruptcy judge for the District of Vermont, Frank G. Conrad. Remand to him in the first instance by the district court would seem appropriate, assuming he is otherwise qualified to act