**In re CATWIL CORPORATION, a California Corporation, Debtor.**

**CATWIL CORPORATION, debtor-in-possession, By and Through the OFFICIAL**

document, including a reasonable attorney's fee.

**COMMITTEE OF UNSECURED CREDITORS, Plaintiff,**

v.

**DERF II, a California general partnership, Embarcadero Office Associates, a California general partnership, Robertson Homes Partners, a California general partnership, Twelve Oaks Associates, a California general partnership, and David W. Fisher, Barton R. Robertson, John Errecart, Daniel Dalanzo, Don R. Lewis, Glenn A Marzion and Alan Friis, individuals, Defendants.**

**CATWIL CORPORATION, debtor-in-possession, By and Through the OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Plaintiff,**

v.

**BANK OF AGRICULTURE & COMMERCE, Barton R. Robertson, an individual and David W. Fisher, an individual, Defendants.**

**CATWIL CORPORATION, debtor-in-possession, By and Through the OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Plaintiff,**

v.

**BUCKEYE RANCH, L.P., a California limited partnership, Hi–Sixty Associates, L.P., a California limited partnership, Herbert L. Dempsey, Jr. 1988 revocable trust, and John Butorac, George Bensch Weldon T. Moss, R. Scott Daugherty Page Von Loben Fels, Richard Filice, Phillip R. Dunn, Stephen D. Jackson, Robert Corkern, Pete Troger, John Errecart, Danny Dalonzo, Donny Lewis and Alan Friis, Defendants.**

**CATWIL CORPORATION, debtor-in-possession, By and Through the OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Plaintiff,**

v.

**Barton R. ROBERTSON, David W. Fisher, Glenn Marzion, John Errecart, Don Lewis, Daniel Dalanzo and Alan Friis, as individuals, Hi–Sixty Associates, L.P., a California limited partnership, and Marguex, L.P. a Calif. limited partnership, Defendants.**

Fed.R.Bankr.P. 9011 (emphasis added).

CATWIL CORPORATION, debtor-in-possession, By and Through the OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Plaintiff,

v.

Barton R. ROBERTSON, David W. Fisher, Glenn A. Marzion, John Errecart, Don R. Lewis, Daniel Dalonzo, Alan Friis, and Embarcadero West Partners, a California general partnership, Defendants.

Bankruptcy No. 92–91348–11.

Adv. Nos. 94–9056 to 94–9059 and 94–9061.

United States Bankruptcy Court, E.D. California.

Sept. 26, 1994.

Iain A. MacDonald and Lawrence J. Fallon, San Francisco, CA, for Official Committee of Unsecured Creditors.

A. Curtis Sawyer, Jr., Freeman, Brown, Hartmann, Sperry & D'Aiuto, Stockton, CA, for defendants.

## MEMORANDUM DECISION

ROBERT L. EISEN, Bankruptcy Judge.

This matter comes before the court on defendant's motion to dismiss the above-referenced adversary proceedings. The motion was heard on July 7, 1994.

### Facts

On April 1, 1992, the debtor, Catwil Corporation ("Catwil"), filed its voluntary Chapter 11 petition. About two years later, on March 7, 1994, this Court authorized the Official Committee of Unsecured Creditors (the "Committee") to retain counsel. The Committee conducted an investigation and advised Catwil's counsel of the existence of certain potential claims to avoid preferential and fraudulent transfers. The alleged transfers involved defendants which were and still are insiders of Catwil.

Catwil disputed the Committee's claims and chose not to file the requested adversary proceedings. On March 31, 1994, one day before the expiration of the statute of limitations on the claims, the Committee, on behalf of and in the name of Catwil, filed complaints to avoid preferential and fraudulent transfers.[1] The Committee did not obtain court approval to bring the actions.

---

1. The Committee's complaint alleged causes of action to avoid preferential and fraudulent transfers pursuant to 11 U.S.C. §§ 544(b), 550(a), and 557(b), and California Civil Code §§ 3439.01 et. seq.

On May 27, 1994, the defendants filed a motion to dismiss the Committee's complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012(b). The defendants based their motion to dismiss on the ground that the Committee lacked standing to bring the adversary proceedings. Specifically, the defendants alleged that to have standing, the Committee must have brought its motion for authority to prosecute claims *before* filing their complaints.

### Issues

The first issue presented is whether an appointed creditors' committee must seek court approval prior to initiating an adversary proceeding on behalf of a debtor where the debtor-in-possession has refused to bring such an action against defendant insiders.

Assuming that prior court approval is necessary, the second issue is whether the court may grant an order *nunc pro tunc* authorizing the creditors' committee to bring the action after the committee has initiated the action.

### Discussion

■ Under section 1107[2] of the Bankruptcy Code, the debtor-in-possession has authority to bring an adversary proceeding on behalf of the estate. Although the Code does not contain a parallel section that authorizes a creditors' committee to initiate adversary proceedings, courts have held that sections 1103(c)(5)[3] and 1109(b)[4] imply such a right. *See, e.g., Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 247–48 (5th Cir.1988); *In re STN Enterprises,* 779 F.2d 901, 904 (2d Cir.1985); *Matter of Marin Motor Oil, Inc.,* 689 F.2d 445, 453 (3d Cir.1982); *In re First Capital Holdings Corp.,* 146 B.R. 7, 11 (Bankr.C.D.Cal.1992); *In re Chemical Separations Corp.,* 32 B.R. 816, 819 (Bankr. E.D.Tenn.1983); *In re Wesco Products Co.,* 22 B.R. 107, 109 (Bankr.N.D.Ill.1982).

The courts are divided, however, on whether a creditors' committee must first obtain court approval in order to have standing to bring its actions. The majority hold that creditors' committees *must* secure court approval before instituting adversary proceedings. *See Louisiana World Exposition v. Federal Insurance Co.,* 858 F.2d 233, 247 (5th Cir.1988); *In re Curry and Sorensen, Inc.,* 57 B.R. 824, 828 n. 3 (9th Cir. BAP 1986) (citing *In re Amarex, Inc.,* 36 B.R. 59, 62 (Bankr.W.Okla.1984)); *In re First Capital Holdings,* 146 B.R. at 11; *In re Toledo Equipment Co.,* 35 B.R. 315, 319–20 (Bankr. N.D.Ohio 1983); *In re Joyanna Holitogs, Inc.,* 21 B.R. 323, 325–26 (Bankr.S.D.N.Y. 1982). According to these decisions, the requirement "promotes the fair and orderly administration of the bankruptcy estate by providing judicial supervision over the litigation to be undertaken." *In re Curry and Sorensen, Inc.,* 57 B.R. at 828 (citing *Meyer v. Fleming,* 327 U.S. 161, 169, 66 S.Ct. 382, 387, 90 L.Ed. 595 (1946); *Gochenour v. George & Francis Ball Foundation,* 35 F.Supp. 508, 518 (S.D.Ind.1940)). Presumably, court oversight over adversary proceedings reduces the likelihood of the unavoidable confusion that would result if creditors were allowed to file suits at their own discretion. *See In re Curry and Sorensen, Inc.,* 57 B.R. at 828. Thus, at a hearing on a creditors' committee's motion for authority to prose-

---

**2.** Section 1107 provides in relevant part:

[A] debtor-in-possession shall have all the rights ... and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.

**3.** Section 1103(c)(5) provides in relevant part:

(c) A committee appointed under section 1102 of this title may—

(5) perform such other services as are in the interests of those represented.

**4.** Section 1109(b) provides:
A party in interest, including the debtor, the trustee, a *creditors' committee,* an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, *may raise* and may appear and be heard on *any issue in a case under this chapter.*
11 U.S.C. § 1109(b) (emphasis added).

cute a claim, both the debtor-in-possession and the defendant are informed of the committee's intent to assert the right of the debtor-in-possession. The debtor-in-possession is also afforded an opportunity to explain to the court the reasons, if any, for declining to prosecute the claim the creditors' committee seeks to assert. *See In re Chemical Separations Corp.,* 32 B.R. at 819.

At least one court, however, has followed the more equitable view that although the creditors' committee *should* obtain court approval, *nunc pro tunc* authorization may be granted in certain circumstances. *In re Chemical Separations,* 32 B.R. at 819.

In *Chemical Separations,* the court granted the creditors' committee *nunc pro tunc* authorization to bring an adversary proceeding because of the extenuating circumstances of the case. First, the court found that the defendant, owning 90% of the debtor's stock, was an insider of the debtor. Second, the court learned that because of the inherent conflict of interest, the debtor's counsel had informed the creditors' committee that it was not going to pursue an action against its insiders. The debtor's counsel had also told the creditors' committee that it would be appropriate for the committee to bring the action instead. Finally, the court noted that the creditors' committee had commenced the adversary proceeding in the name of the debtor, and not in its own name. *Id.* at 819. Based on these facts, there was not a significant likelihood that confusion would result if the creditors' committee commenced the action.

This Court finds the *Chemical Separations* decision persuasive as well as applicable to the case at hand. Indeed, the facts of this case closely parallel those of *Chemical Separations.*

As in that case, several factors weigh against dismissing the Committee's complaints based on a failure to obtain prior court approval. First, the defendants are all insiders of Catwil. In fact, one of the defendants, Barton R. Robertson, is the president of the Catwil Corporation. The inherent conflict of interest between Catwil and the insider-defendants made it unlikely that Catwil would initiate an avoidance action against the defendants.

Second, it appears that Catwil was fully aware of the Committee's intent to file the actions on its behalf. While there remains a question as to whether Catwil actually gave the Committee authorization to bring the actions, the Court infers from the filed pleadings that the Committee and Catwil engaged in extensive discussions concerning the propriety of the actions.

Third, time was of the essence in filing the complaints, as the statute of limitations was about to run on the causes of action. Although the Committee should have sought court authorization before filing the complaints, it is apparent that the circumstances did not allow sufficient time to do so.

Finally, there was little, if any, likelihood of confusion as to which party was going to bring the adversary proceedings. At the time of filing, both the defendants and the Committee could safely assume that Catwil was not planning to file any actions.

Based on several of the foregoing factors, the Committee has urged the Court to exercise its equitable powers and approve its application for *nunc pro tunc* authorization to prosecute the claims. The defendants disagree. They argue that *nunc pro tunc* relief is improper since the Committee failed to demonstrate "extraordinary circumstances" preventing it from obtaining court approval. In support of their argument, the defendants invite the Court to compare cases involving *nunc pro tunc* appointment of counsel for guidance in determining whether such relief is appropriate in this case. *See In re Kroeger Properties and Development, Inc.,* 57 B.R. 821, 822 (9th Cir. BAP 1986).

 Upon review of the defendant's cited authority, this Court determines that cases involving *nunc pro tunc* appointment of *counsel* are not applicable where a creditors' committee seeks *nunc pro tunc* authorization to prosecute claims not filed in a timely fashion. In the appointment of counsel context, the Bankruptcy Code explicitly requires that debtor's counsel obtain prior court approval. *See* 11 U.S.C. § 327. The reason courts have limited *nunc pro tunc* appoint-

ment of counsel to cases involving "extraordinary circumstances"[5] is to discourage the general non-observance of Code requirements while still allowing for equitable relief. *In re Kroeger Properties and Development, Inc.*, 57 B.R. at 822–23. In this case, the potential danger of non-observance of statutory requirements is not present since, as noted, the issue of prior court approval has not yet been definitively settled and is judicial gloss.

The policies underlying the court approval requirement in the two contexts are also distinguishable. Whereas the policy in the appointment of counsel context is to control the administrative costs of the estate[6], the policy underlying the prior court approval requirement for actions by creditors' committees is to avoid confusion among parties. Comparing the two situations is simply inappropriate.[7]

### Conclusion

After considering the equitable concerns of the parties involved, the Court approves the Committee's application for *nunc pro tunc* authorization to prosecute the fraudulent transfer claims on behalf of Catwil. The causes of action are thereby preserved.

This constitutes the findings of fact in each case.

---

**5.** The term "extraordinary circumstances" is not clearly defined. However, it is clear that "neglect" or "mere inadvertence" on the part of counsel in failing to obtain court approval does not meet the requirement. *See, e.g., In re Shirley*, 134 B.R. 940, 944 (9th Cir. BAP 1992); *In re Crook*, 79 B.R. 475, 479 (9th Cir. BAP 1987); *In re Arkansas*, 798 F.2d 645, 649 (3d Cir.1986).

**6.** *In re Haley*, 950 F.2d 588 (9th Cir.1991) (noting that purpose of court appointment of counsel is to eliminate volunteerism and to aid court in controlling estate administrative expenses). Courts developed the exception to the Code provision to alleviate inequitable results. *See In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289

(5th Cir.1983); *In re Laurent Watch Co.*, 539 F.2d 1231 (9th Cir.1976); *see also In re THC Financial Corp.*, 837 F.2d 389, 392 (9th Cir.1988) (holding that attorney fees may be granted where attorney provides satisfactory reason for not obtaining prior court approval and also shows that attorney's services have provided significant benefit to estate). In essence, the nunc pro tunc authorization ratifys the attorney's work that the court would have approved if the attorney had submitted a timely motion for appointment.

**7.** Reasonableness and approval of attorney's fees and expenses incurred by the Creditors' Committee during the course of litigating the claims remains subject to judicial scrutiny.