In re TOGETHER DEVELOPMENT CORP., Debtor.

Together Development Corp., Plaintiff,

v.

Brian Pappas, individually; Jeffrey Pappas, individually; Brian Pappas, in his capacity as director and officer of Together Development Corp.; Jeffrey Pappas, in his capacity as director and officer of Together Development Corp., et al., Defendants.

Bankruptcy No. 97–47830 (JBR).
Adversary No. 99–4314(JBR).

United States Bankruptcy Court,
D. Massachusetts.

June 4, 2001.

John J. Monaghan, Holland & Knight, Boston, MA, for Plaintiff.

Kevin McGee, Seder & Chandler, Worcester, MA, for Defendants.

sented to be widely-held within the family law bar.

### MEMORANDUM OF DECISION ON REMAND

JOEL B. ROSENTHAL, Bankruptcy Judge.

Before the Court for determination is the February 14, 2001 remand order of the Honorable Edward F. Harrington of the United States District Court for the District of Massachusetts. Judge Harrington remanded an appeal taken from decisions of the Honorable James F. Queenan, Jr. of this Court[1] for consideration of whether the lack of an objection to the initial stipulation entered into by the debtor-in-possession and the Creditors' Committee in the main Chapter 11 Case constitutes a "waiver" of any standing arguments the Defendants may raise in this adversary proceeding, as well as a reconsideration of the matter as it relates to the United States Supreme Court's decision in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). To that end, this Court requested memoranda from the parties and heard oral argument concerning the remand, which includes review of the underlying Motion to Dismiss, Motion to Amend the Stipulation and Defendants' Objection thereto, as well as the original, unopposed, Stipulation, after which the Court took the matter under advisement.

### I. *Facts:*

Together Development Corp., a purveyor of franchises providing dating services, filed a voluntary Chapter 11 petition on November 7, 1997 ("the Main Case"). As is often the case, the principals of the Debtor were the individuals who sought out and retained the services of bankruptcy counsel for the corporate Debtor. A problem arose when allegations were made of possible fraudulent transfers by the

Debtor's principals. In such circumstances the dilemma often becomes whether debtor's counsel can realistically address such issues with the involvement of the principals who originally retained their services. Other parties in interest usually feel no such connection to the debtor's principals and, in an attempt to seek out possible sources of debt repayment within the case, may demand that any allegations against the principals be investigated and pursued. Such is the case here where Counsel to the Creditors Committee attempted to fill the gap which Debtor's Counsel declined to take up.

In the Fall of 1999, the statute of limitations for avoidance actions was fast approaching. In order to protect the estate's claims from the jeopardy of the statute of limitations, the Debtor and the Committee entered into a Stipulation that they filed in the Main Case on November 8, 1999; all interested parties were given proper notice and an opportunity to be heard. Committee Counsel represented to the Court that the parties' intent in entering into such Stipulation was to effectuate permission for the Committee to initiate all causes of action on behalf of the Debtor prior to the expiration of the statute of limitations, specifically because Debtor's Counsel felt it would be inappropriate to pursue those actions. Judge Queenan approved the Stipulation on November 30, 1999 after notice to all necessary parties and no objections having been filed. Committee Counsel acknowledges the Stipulation contained a "scrivener's error" in that the Stipulation omitted a specific grant of authority for the Committee to bring "avoidance actions," notwithstanding that the recitals referred to granting the Committee that authority. The parties to the Stipulation addressed the omission by filing an Amended Stipulation. The Defendants

---

1. Judge Queenan retired in July 2000.

herein, including Brian and Jeffrey Pappas, former principals of the Debtor, all hereinafter collectively the "Defendants," filed timely objections to the Amended Stipulation. The issue came before Judge Queenan, at which time Judge Queenan approved the Amended Stipulation over the Defendants' objection.

The Committee commenced the instant adversary proceeding ("the Adversary Proceeding") on November 5, 1999 by filing a thirty-two count complaint ("the Complaint") naming the Debtor as Plaintiff, but signed by Committee Counsel on the Debtor's behalf "By and Through the Official Committee of Unsecured Creditors." The Complaint may fairly be described as a complaint to avoid and recover preferential transfers as defined by the Bankruptcy Code. However, it is important to note that it also contains state law claims for breach of fiduciary duty and violations of corporate law. Judge Queenan also heard a Motion to Dismiss the Adversary Proceeding based on the Defendants' contention that the Committee lacked standing. Judge Queenan denied that motion, finding the Defendants were barred from challenging the Committee's standing because: (1) the Defendants failed to object to the original Stipulation; (2) *Hartford Underwriters* was factually and legally distinguishable from the Adversary Proceeding; (3) 11 U.S.C. § 1109(b) authorized the Committee to file the Adversary Proceeding, and; (4) both 11 U.S.C. § 105(a) and established bankruptcy law practice supported the Committee's actions.

In this case there are approximately seven million dollars of creditors' claims, and Committee Counsel believes that recovery in the Adversary Proceeding may potentially provide full payment to all creditors.

## II. *Discussion:*

### A. *Waiver:*

One of the issues presented on remand is whether the Defendants waived their right to raise the issue of the Committee's standing to bring the Adversary Proceeding by failing to object to the original Stipulation. Although Judge Queenan did not use the term "waiver" in rendering the orders concerned herein,[2] his statement on the record that the Defendants failed to object to the initial Stipulation renders an inquiry into waiver a proper one. Judge Harrington's question on remand is particularly relevant here, as in every case before a federal court, insomuch as "federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citing *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). The First Circuit has stated that objections to a party's standing in a given case cannot be waived, and the court must consider a challenge to party's standing whenever raised, regardless of whether the challenger failed to make an earlier challenge, or whether the court itself sees a standing problem. *See United States v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir.1992). The Defendants therefore did not waive their challenge to the Committee's standing because such an objection cannot be dispositively waived. *See Sentinel Trust Co. v. Newcare Health Corp. (In re Newcare Health Corp.)*, 244 B.R. 167, 170 (1st Cir. BAP 2000). Having resolved that the Defendants could not have waived their challenge to the Committee's stand-

2. Tr., June 26, 2000, pgs. 29–32.

ing in this Adversary Proceeding, the Court now turns to decide whether that challenge has merit.

### B. Hen House:

 The central issue presented on remand for this Court to decide is what impact, if any, the Supreme Court's decision in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 1946, 147 L.Ed.2d 1 (2000), has on the Committee's standing in the Adversary Proceeding. The Defendants rely heavily on this decision, often referred to as the *"Hen House"* case, for the proposition that the explicit statutory language confers standing only on "the trustee" to pursue alleged preferential transfers of the Debtor's property. *See* 11 U.S.C. § 547(b), (d). The Defendants admit the argument is not a matter of settled law. In fact, the Defendants cite various cases in which courts have accepted the function of such arrangements. *See Unsecured Creditors' Comm. v. Farmers Sav. Bank (In re Toledo Equip. Co., Inc.)*, 35 B.R. 315, 318–19 (Bankr.N.D.Ohio 1983); *Official Comm. of Unsecured Creditors v. I. Hyman Corp. (In re Joyanna Holitogs, Inc.)* 21 B.R. 323, 325–26 (Bankr.S.D.N.Y. 1982); *Comm. of Unsecured Creditors v. Monsour Med. Ctr. (In re Monsour Med. Ctr.)*, 5 B.R. 715 (Bankr.W.D.Pa.1980). This Court is persuaded that the Supreme Court's *Hen House* decision is not controlling in this instance, and that the Committee's authority to prosecute such actions is authorized by 11 U.S.C. §§ 1103(c)(5) and 1109(b),[3] which if successful in the case at hand may result in payment of claims that might otherwise go unpaid because the statute of limitations would have barred

recovery. Here the Committee, on behalf of and as the agent of the Debtor, seeks recovery for the Debtor's entire estate, not simply the unsecured creditors, insofar as prosecuting such an action successfully will certainly benefit the estate's constituents.

For example, the bankruptcy court in *Catwil Corp. v. Derf, II, et al. (In re Catwil Corp.)*, 175 B.R. 362 (Bankr. E.D.Cal.1994), also recognized the standing conferred on creditors' committees to prosecute actions like this Adversary Proceeding deriving from the combination of §§ 1103(c)(5) and 1109(b) of the Bankruptcy Code. In *Catwil*, the debtor filed a voluntary Chapter 11 petition, and two years later the court authorized the employment of counsel to the creditors' committee. *Catwil*, 175 B.R. at 364. Upon investigation of the debtor's principals, the committee discovered potential fraudulent transfers by insiders. *Catwil*, 175 B.R. at 364. Debtor's counsel disputed the claims and refused to pursue the committee's allegations as counsel to the debtor in possession. *Catwil*, 175 B.R. at 364. One day prior to the expiration of the statute of limitations, committee counsel, without court approval, filed adversary proceedings in the debtor's name to recover alleged preferential and fraudulent transfers. *Catwil*, 175 B.R. at 364. The insider defendants moved to dismiss for lack of standing, and the court responded by granting the committee authority to prosecute the action *nunc pro tunc*. *Catwil*, 175 B.R. at 366. In making its determination, the *Catwil* court weighed four factors: (1) whether the defendants were insiders of the debtor; (2) whether the debtor was fully aware of the committee's intent to file

---

**3.** Section 1103(c)(5) of the Bankruptcy Code authorizes "[a] committee appointed under section 1102 of this title [to] perform such other services as are in the interest of those represented." 11 U.S.C. § 1103(c)(5). Additionally, § 1109(b) grants such a committee standing to "raise and ... appear and be heard on any issue in a case" under the Bankruptcy Code. 11 U.S.C. § 1109(b).

the actions; (3) whether time was of the essence in filing the complaints, and; (4) whether there was any likelihood of confusion as to which party would pursue the claims. *Catwil*, 175 B.R. at 365. Thus it is evident to this Court that the Bankruptcy Code anticipates and provides for the approach pragmatically adopted by various other bankruptcy courts to deal with the conflicts arising with insiders of corporate bankruptcy debtors. *See e.g.*, *Toledo Equip. Co. Inc.*, 35 B.R. at 318–19; *Joyanna Holitogs, Inc.* 21 B.R. at 325–26; *Monsour Med. Ctr.*, 5 B.R. 715.

In the case before this Court, all the above mentioned factors weigh in favor of allowing the Committee's action to proceed where the Debtor delegated the authority to file the Adversary Proceeding and the Court approved such an agreement twice, albeit once over the Defendants' objection, when the Court approved the parties' Amended Stipulation. For instance, there is no allegation the Defendants are not or were not insiders of the Debtor, nor that they did not know beforehand that the Committee planned to bring the Adversary Proceeding. Furthermore, no meritorious argument can be made that time was not of the essence in this matter, or that the Defendants were confused or misled as to what party would initiate the Adversary Proceeding. On the contrary, Debtor's Counsel balked at pursuing those claims, and the Debtor agreed to delegate that responsibility to the Committee. On these facts it is very difficult for the Court to find justification in the Defendants' technical defense arguments to the Committee's allegations of serious insider wrongdoing.

Further buttressing the Court's conclusion that the *Hen House* case is inapplica-ble to delegated prosecution of avoidance actions under the Bankruptcy Code are the vastly different factual and legal scenarios posed by the *Hen House* case and this Adversary Proceeding. In *Hen House*, a workers' compensation insurer, as a creditor of the debtor Hen House Interstate, Inc., attempted to surcharge a secured creditor for unpaid post-petition insurance premiums owed by the debtor following conversion of the debtor's case from Chapter 11 to Chapter 7. *Hartford Underwriters*, 120 S.Ct. at 1944. Even as an administrative claim, there were no funds to pay the premiums, so the insurer sought payment pursuant to 11 U.S.C. § 506(c).[4] *Hartford Underwriters*, 120 S.Ct. at 1946. The Court cited *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), for the proposition that the express language of the statute controls because the Court typically presumes that Congress "says in a statute what it means and means in a statute what it says there." *Hartford Underwriters*, 120 S.Ct. at 1947. Applying that principle, the Court determined that 11 U.S.C. § 506(c) grants only the trustee standing to seek recovery under § 506(c), not other parties, even in the absence of specific language denying others such standing. *Hartford Underwriters*, 120 S.Ct. at 1947. The Court specifically stated in a footnote that the *Hen House* opinion did not address whether a bankruptcy court may allow other interested parties to act in the trustee's stead in pursuing recovery under statutes other than § 506(c), specifically referring to "the practice of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so,

---

4. 11 U.S.C. § 506(c) provides that "[the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or dis-posing of, such property to the extent of any benefit to the holder of such claim]." 11 U.S.C. § 506(c).

even though the applicable Code provision, *see* 11 U.S.C. §§ 544, 545, 547(b), 548(a), 549(a), mention only the trustee." *Hartford Underwriters,* 120 S.Ct. at 1951 n. 5. The Court noted there that whatever the validity of such practice, it had no application in the case before the Court as the claim there was that of a lone creditor seeking an independent right to surcharge a secured creditor's collateral under § 506(c) for its own benefit. *Hartford Underwriters,* 120 S.Ct. at 1951 n. 5.

Despite the United States Supreme Court's efforts to distinguish between the different claims, the Defendants herein attempt to bootstrap their arguments under *Hen House.* The circumstances of this Adversary Proceeding, though, are clearly distinct from those in *Hen House* because the Plaintiff herein is the Debtor seeking recovery for all the creditors of the bankruptcy estate, not a lone creditor seeking recovery for its sole benefit, as was the case in *Hen House. Hartford Underwriters,* 120 S.Ct. at 1946. Furthermore, *Hen House* turned on an interpretation of 11 U.S.C. § 506(c), a statute that is inapplicable in this case. *Hartford Underwriters,* 120 S.Ct. at 1947. The *Hen House* Court held that an administrative claimant does not have an independent right to seek payment of its claim from property encumbered by a secured creditor's lien in a case converted from Chapter 11 to Chapter 7. *Hartford Underwriters,* 120 S.Ct. at 1947. The case is often cited for the Supreme Court's determination that if the language of a statute is plain on its face, the sole function of the courts is to enforce it so long as the outcome is not absurd. *Hartford Underwriters,* 120 S.Ct. at 1947. The Defendants, though, can point to no provision of the Code that *prohibits* the Committee's action herein. On the other hand, other courts have held that a creditors' committee may bring an adversary proceeding pursuant to § 1109(b) on the debt-

or's behalf to avoid fraudulent transfers, sometimes even after the fact, when the defendants were insiders, the debtor was aware of the claims and the committee's intent to pursue them, and the claims were subject to a limitations bar at a time when debtor's counsel refused to pursue the claims. *See Catwil,* 175 B.R. at 365. The circumstances presented herein being remarkably similar to those found dispositive by other bankruptcy courts, I find the equities balance in favor of sustaining Judge Queenan's orders because the Committee's actions are overwhelmingly beneficial to all members of the Debtor's estate in accordance with 11 U.S.C. § 1103(c)(5). As such, I conclude the specter of the *Hen House* decision as applied to this Adversary Proceeding is no more than a red herring.

As noted above, footnote 5 of the Supreme Court's *Hen House* decision clearly demonstrates that the Court did not decide the issue before this Court, and for good reason. The Supreme Court refrained from addressing this precise issue in recognition of the policy considerations that are the genesis of the long standing bankruptcy practice the Defendants challenge here. Although there is no determination of the allegations raised herein, the course of this Adversary Proceeding boldly sets forth the means by which insiders may abuse their positions to manipulate the bankruptcy process and circumvent the Bankruptcy Code in order to limit their own personal exposure to creditors' claims. What transpired in this case was premised on the parties expectations of the utilitarian, time tested process which has evolved in bankruptcy law and under the Bankruptcy Code in order to ensure that appropriate lawsuits proceed in cases where debtor's counsel has some reason not to pursue all potential assets of the estate due to a conflict of interest, be that conflict

real or perceived. The practice I refer to is not simply pre-Code practice, but rather current practice. To dismiss this Adversary Proceeding for lack of the Committee's standing would be inapposite to this well entrenched practice, as well as cost and time inefficient. The Committee brought the action in the name of the Debtor, and the Debtor unquestionably has standing under § 547 of the Code. If the Defendants wish to challenge Debtor's Counsel's choice of agent or counsel to pursue the action, which has been approved by Judge Queenan, they may attempt to do so. However, this will not terminate the Adversary Proceeding as the Court views such a challenge as an issue of representation and not one of standing.

Other circumstance in this case illustrate the potential for serious abuse of the bankruptcy system. For example, no plan of reorganization has yet been filed in this 1997 case, thus no estate representative has been appointed to pursue such causes of action. In light of this, the Defendants seem to suggest that not only may Debtor's principals be able to control a company until its demise into bankruptcy, and then direct Debtor's Counsel not to act on allegations of insider fraud, but that those same insiders should also be permitted to delay the filing of a plan and appointment of an estate representative beyond the limitations period to ensure that no party will pursue recovery actions for any alleged insider wrong-doing. Such a result, orchestrated entirely by the Defendants herein, is not countenanced by the Bankruptcy Code or this Court. It is clear that the Committee is in the unusual position of guarding against certain potential gaps in the handling of a bankrupt estate. That reality proves exceedingly valuable in cases just such as this. In fact, the Committee acted within its authority out of concern for its constituents, the unsecured creditors. Whether that also reaps a benefit for all creditors is yet to be determined by the outcome of the Adversary Proceeding.

The filing of the Adversary Proceeding prior to the running of the statute of limitations raised colorable claims and named the appropriate parties as defendants. Regardless of whether Committee Counsel or other counsel will ultimately prosecute the action, both the Bankruptcy Code and long standing bankruptcy practice contemplate the reality of such situations, and provide the practical solution of permissive delegation in order to avoid an insider's circumvention of either the letter or the spirit of the Bankruptcy Code. The claims were timely and properly raised in the Debtor's name, and the technical objection that the Committee brought the suit for the Debtor should not operate as a bar conferring a concomitant windfall on the Debtor's insiders to the detriment of the creditors.[5] The expectations of all of the active parties in this case was that some party would pursue the Adversary Proceeding against the insiders. Fortunately for those parties, the Bankruptcy Code provides a statutory mechanism preventing their disappointment in that regard.

5. At oral argument, Debtor's Counsel suggested the proper remedy for conflict situations such as those presented in this case is for the Court to appoint a trustee to pursue the avoidance actions against the Debtor's insiders. See 11 U.S.C. § 1104(a). While Counsel's suggestion is well taken, the Court points out that the availability of a trustee under the Code does not preclude the propriety of the remedy elected by the parties in this case, and in fact may well have saved the estate the additional administrative expense that might well have grown up around the appointment of yet another officer in the Debtor's case. Furthermore, the Court notes there were no allegations made in this case that any other "cause" existed to warrant the appointment of a trustee in this case.

Lastly, the Defendants also raise the issue presented to the First Circuit Court of Appeals in *Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305 (1st Cir.1993). In that case a secured creditor agreed to work with the creditors' committee to maximize recovery from the estate and in return, the secured creditor agreed to share the satisfaction of its collateral with unsecured creditors. Both the bankruptcy court and the district court felt the agreement violated the priorities established by the Bankruptcy Code. However, the Court of Appeals for the First Circuit disagreed. The Defendants herein cite this case for the proposition that an unsecured creditors' committee represents only the unsecured creditors, and not the entire bankruptcy estate. Therefore, Defendants argue, the Committee in this case is akin to any individual creditor with no authority under 11 U.S.C. § 1129(b)(3)(B) to act as estate representative.[6] However, the Defendants overlook an important point in which that Court stated that:

> The creditors' committee is not merely a conduit through whom the debtor speaks to and negotiates with creditors generally. On the contrary, it is purposely intended to represent the necessarily different interests and concerns of the creditors it represents. It must necessarily be adversarial in a sense, though its relation with the debtor may be supportive and friendly. There is simply no other entity established by the Code to guard those interests. The committee as the sum of its members is not intended to be merely an arbiter but a partisan which will aid, assist and

monitor the debtor pursuant to its own self interest.

*SPM Mfg. Corp.*, 984 F.2d at 1316 (citing *In re Daig Corp.*, 17 B.R. 41, 43 (Bankr. D.Minn.1981)). In light of this observation regarding the role of a committee appointed under Title 11, it is not at all unusual to expect the Committee to take a position adversarial to the Debtor or the Debtor's insiders in the course of fulfilling its fiduciary duties to estate constituents. The acts this Committee has taken are not at all inconsistent with those duties.

### III. *Conclusion:*

Judge Queenan approved the Stipulations authorizing the Committee to prosecute the claims against the Defendants and those orders are now affirmed upon this Court's further consideration of the matter. The Committee timely filed the Adversary Proceeding in the Debtor's name, and there being no provision of the Bankruptcy Code prohibiting such a delegation, this Court follows others before it and affirms Judge Queenan's denial of the Motion to Dismiss. The Adversary Proceeding filed by the Committee will proceed, even if it proves necessary to appoint special counsel to the Debtor.

For all of the foregoing reasons, the Court having reconsidered and independently affirmed Judge Queenan's Orders of June 26, 2000, this Adversary Proceeding shall now proceed in the ordinary course of litigation.

IT IS SO ORDERED.

---

**6.** Section 1123(b)(3) of the Bankruptcy Code states, in relevant part, that "[s]ubject to subsection (a) of this section, a plan may ... provide for ... the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3)(B).